UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Joseph Green, II ) <br><br> Plaintiff, ) <br><br> v. ) <br><br> CITY OF PHILADELPHIA, acting through the ) <br> PHILADELPHIA DISTRICT ATTORNEY'S OFFICE ) <br><br> LAWRENCE S. KRASNER, District Attorney ) <br> In his individual capacity; ) <br><br> ROBERT LISTENBEE, First Assistant District Attorney ) <br> In his individual capacity; and ) <br><br> CHRIS ANGELO, ) <br> in his individual capacity, ) <br><br> Defendants. ) | Civil Action No. _____ <br><br> **Jury Trial Demanded** |

**COMPLAINT**

Plaintiff Joseph Green II ("Plaintiff"), brings this action against Defendants City of

Philadelphia, acting through the Philadelphia District Attorney's Office ("DAO"), Lawrence S.

Krasner, Robert Listenbee, and Chris Angelo, and alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for race discrimination, retaliation, hostile work environment, age

   discrimination, and deprivation of Plaintiff's right to equal protection of the laws arising from

   discriminatory employment practices within the Philadelphia District Attorney's Office.

2. Plaintiff is an African American attorney who was approximately fifty-three years old during the principal events giving rise to this action.

3. Plaintiff possessed approximately eighteen to nineteen years of legal experience, including extensive criminal-defense, prosecutorial, trial, supervisory, diversion-program, and courtroom experience.

4. Despite Plaintiff's qualifications and experience, Defendant subjected him to a course of materially different treatment than similarly situated white attorneys, including denial of professional opportunities, discriminatory assignments, involuntary reassignment, physical and organizational isolation, heightened scrutiny, interference with earned leave, threats concerning his employment, and exclusion from career-enhancing cases.

5. Plaintiff further alleges that the treatment directed toward him occurred in the context of broader racial disparities within the DAO involving assignments, advancement, discipline, trial opportunities, and treatment of Black attorneys.

6. After Plaintiff complained to First Assistant District Attorney Robert Listenbee concerning the DAO's handling of racially and sexually offensive conduct by a white male ADA directed toward Black female ADAs, Plaintiff was subjected to additional materially adverse treatment.

7. Plaintiff alleges that Defendant's actions violated Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), and the Equal Protection Clause of the Fourteenth Amendment, enforceable pursuant to 42 U.S.C. § 1983.

**JURISDICTION AND VENUE**

8. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law.

9. This Court has jurisdiction over Plaintiff's Title VII claims pursuant to 42 U.S.C. §§ 2000e et seq. and 2000e-5(f)(3).

10. This Court has jurisdiction over Plaintiff's ADEA claim pursuant to 29 U.S.C. §§ 621 et seq. and 626(c).

11. This Court has jurisdiction over Plaintiff's constitutional claims pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343.

12. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391 because Defendant is located within this District and substantially all acts and omissions giving rise to Plaintiff's claims occurred in Philadelphia, Pennsylvania.

**PARTIES**

13. Plaintiff Joseph Green II is an adult individual residing in Philadelphia, Pennsylvania.

14. The Plaintiff is African American.

15. Plaintiff was approximately fifty-three years old during the principal events giving rise to this litigation and was therefore within the class protected by the ADEA.

16. Plaintiff is a licensed attorney with substantial experience in criminal litigation, prosecution, criminal defense, supervision, diversion programs, and trial practice.

17. Defendant City of Philadelphia is a municipal corporation organized under Pennsylvania law.

18.     The Philadelphia District Attorney's Office is the governmental office through which the employment practices challenged herein occurred.

19.     The City and/or DAO employed Plaintiff within the meaning of Title VII and the ADEA.

20.     Defendant Lawrence S. Krasner was at all relevant times the elected District Attorney of Philadelphia.

21.     As District Attorney, Krasner exercised supervisory and policymaking authority concerning the management and operation of the DAO, subject to applicable law.

22.     Plaintiff alleges that Krasner knew or should have known of systemic disparities in the treatment, assignment, advancement, and discipline of Black attorneys within the DAO and failed to take adequate corrective measures.

23.     Defendant Robert Listenbee was at all relevant times the First Assistant District Attorney and exercised substantial supervisory authority over Plaintiff.

24.     Listenbee personally participated in numerous employment actions challenged herein, including Plaintiff's transfer, assignments, leave disputes, supervision, scrutiny, and threats of employment consequences.

25.     Defendant Chris Angelo was at all relevant times a supervisory attorney within the Juvenile Unit.

26.     Angelo personally participated in conduct directed toward Plaintiff, including exclusionary and confrontational treatment described below.

27.     Krasner, Listenbee, and Angelo are sued individually under 42 U.S.C. § 1983 only to the extent their personal conduct caused or participated in the deprivation of Plaintiff's constitutional rights.

28.     Plaintiff does not assert Title VII or ADEA claims against Krasner, Listenbee, or Angelo in their individual capacities.

## ADMINISTRATIVE EXHAUSTION AND TIMELINESS

29.     Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), Philadelphia District Office.

30.     The Charge alleged discrimination on the basis of race and age and described discriminatory and retaliatory treatment by the Philadelphia District Attorney's Office.

31.     The EEOC assigned Plaintiff's administrative proceeding **Charge No. 530-2025-06057**.

32.     Plaintiff's Charge identified the Philadelphia District Attorney's Office as Respondent.

33.     Plaintiff alleged, among other matters, race discrimination, age discrimination, discriminatory assignments, denial of professional opportunities, disparate treatment, interference with leave, workplace isolation, retaliation, and discriminatory working conditions.

34.     On **May 12, 2026**, the EEOC issued its **Determination and Notice of Rights** concerning Charge No. 530-2025-06057.

35.     The EEOC stated that it would not proceed further with its investigation and made no determination concerning whether further investigation would establish violations of the applicable statutes.

36.     The EEOC expressly stated that its determination did not mean that Plaintiff's claims lacked merit and did not constitute a finding that Defendant complied with the applicable statutes.

37.     The May 12, 2026 Determination and Notice of Rights constituted Plaintiff's official Notice of Right to Sue.

38.    The Notice informed Plaintiff that a federal lawsuit based upon the Charge was required to be commenced within ninety days of Plaintiff's receipt of the official notice.

39.    Although the EEOC issued the Notice on May 12, 2026, Plaintiff received the Notice on **July 13, 2026**.

40.    Plaintiff's copy of the Notice bears a contemporaneous date-and-time receipt stamp stating: **"JUL 13 '26 PM 1:43."**

41.    Plaintiff therefore received the EEOC Determination and Notice of Rights on **July 13, 2026, at approximately 1:43 p.m.**

42.    A true and correct copy of the EEOC Determination and Notice of Rights bearing the July 13, 2026 receipt stamp is attached hereto as **Exhibit A**.

43.    Plaintiff commenced this action within ninety days of his July 13, 2026 receipt of the Notice.

44.    Plaintiff has therefore timely commenced this action and exhausted the administrative prerequisites applicable to his Title VII claims.

45.    Plaintiff likewise presented his age-discrimination allegations to the EEOC in Charge No. 530-2025-06057.

46.    More than sixty days elapsed between Plaintiff's filing of his EEOC Charge and commencement of this action.

47.    Plaintiff has therefore satisfied the administrative prerequisites applicable to his ADEA claim.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Experience and Return to the DAO

48.     Plaintiff possesses extensive experience as both a criminal defense attorney and prosecutor.

49.     By the relevant period, Plaintiff had approximately eighteen to nineteen years of legal experience.

50.     Plaintiff's professional experience included more than ten years of criminal defense practice, prosecutorial experience, substantial trial experience, supervisory experience, and prior service within the Philadelphia District Attorney's Office.

51.     In approximately June 2023, Plaintiff was invited to return to the Philadelphia District Attorney's Office.

52.     Upon his return, Plaintiff was assigned to his former position as Assistant Chief of the Diversion Unit.

53.     Plaintiff had previously served in that leadership position for more than three years.

54.     Plaintiff possessed substantial institutional knowledge regarding the operation, mission, administration, and objectives of the Diversion Unit.

### B. Denial of Leadership Opportunity

55.     Despite Plaintiff's qualifications, experience, prior leadership, and familiarity with Diversion, Defendant did not consider or select Plaintiff for Chief of Diversion.

56.     Shortly after Plaintiff returned, Plaintiff and then-Chief Angel Flores were removed from their Diversion leadership positions without meaningful advance explanation.

57.    Defendant thereafter selected Caleb Arnold, a white attorney with materially less legal and Diversion experience than Plaintiff, for a Diversion leadership position.

58.    Plaintiff alleges that Arnold possessed substantially less experience than Plaintiff and lacked Plaintiff's depth of knowledge concerning the unit.

59.    Plaintiff alleges that this denial of advancement was consistent with a broader practice whereby white attorneys received leadership and career-enhancing opportunities denied to qualified Black attorneys.

**C. Plaintiff Opposes Racially Offensive Workplace Conduct**

60.    In February 2024, Plaintiff spoke directly with First Assistant Robert Listenbee concerning the DAO's handling of a white male Assistant District Attorney who made an explicitly racial and sexual statement to several Black female ADAs.

61.    The white ADA reportedly stated that he "liked Black pussy."

62.    Plaintiff expressed disappointment and concern regarding the DAO's response to the incident.

63.    Plaintiff understood that the white ADA received a four-month suspension with pay.

64.    Plaintiff reasonably believed that the DAO's response reflected tolerance of serious racially and sexually offensive conduct by a white male employee.

65.    Plaintiff communicated his opposition to Listenbee.

66.    Plaintiff's verbal complaint constituted opposition to conduct and practices he reasonably believed implicated unlawful discrimination.

**D. Involuntary Transfer Following Plaintiff's Complaint**

67.     On approximately March 7, 2024, shortly after Plaintiff complained regarding the handling of the racially offensive incident, Listenbee informed Plaintiff that he was required to accept an involuntary transfer.

68.     Listenbee claimed that because Plaintiff received a raise from "ear-marked money," Plaintiff was required to transfer to a specialized assignment.

69.     Plaintiff asked whether any alternative assignment was available.

70.     Listenbee emphatically informed Plaintiff that no alternative existed.

71.     The conversation occurred in the presence of Deb Watson-Stokes.

72.     Listenbee represented that Plaintiff would be assigned significant specialized matters involving juvenile carjackings and prolific gun offenders.

73.     Listenbee represented that Plaintiff would not be required to "run a list" or perform ordinary courtroom-list responsibilities.

74.     Those representations were not honored.

75.     Plaintiff was subsequently denied the specialized volume and quality of carjacking and firearm cases that had been represented as the substance of his assignment.

**E. March 25, 2024 Jury Duty Incident**

76.     On approximately March 25, 2024, Plaintiff was summoned for jury service.

77.     Listenbee asked Plaintiff to attempt to get out of his jury obligation.

78.     Plaintiff considered this request inappropriate and coercive.

**F. Drug Treatment Court Assignment**

79.　On approximately April 15, 2024, Listenbee reassigned or directed Plaintiff to participate in Drug Treatment Court.

80.　Drug Treatment Court was unrelated to the purported earmarked funding that Listenbee previously represented as requiring Plaintiff's transfer.

81.　Plaintiff asked Listenbee to clarify Plaintiff's responsibilities.

82.　Listenbee admitted that he did not know precisely what Plaintiff's role would entail.

83.　Listenbee nevertheless expected Plaintiff to attend a meeting on April 16.

84.　Plaintiff had a previously scheduled appointment.

85.　Plaintiff responsibly arranged for ADA Vazken, who ordinarily handled Drug Treatment Court, to provide coverage.

86.　Despite Plaintiff's arrangement of appropriate coverage, Listenbee subsequently berated Plaintiff and accused him of having "let the office down."

87.　Listenbee also accused Plaintiff of failing to support the office.

88.　Plaintiff alleges that these accusations were unwarranted and reflected the heightened scrutiny imposed upon him.

**G. April 25, 2024 Leave Incident**

89.　On April 25, 2024, Plaintiff worked remotely during the morning pursuant to workplace procedures then in effect.

90.　Plaintiff informed Juvenile Unit Supervisor Chris Angelo that Plaintiff would work remotely in the morning, briefly attend his daughter's track event at the Penn Relays, and thereafter report physically to the office.

91.    Plaintiff worked from approximately 8:00 a.m. until approximately 10:45 a.m.

92.    Plaintiff then attended the event.

93.    Plaintiff subsequently reported to the DAO at approximately 2:20 p.m.

94.    Plaintiff remained working until approximately 10:00 p.m.

95.    Plaintiff therefore performed more than a full workday.

96.    Nevertheless, Listenbee unilaterally submitted or caused a vacation day to be charged against Plaintiff based upon the assertion that Plaintiff had been absent.

97.    Plaintiff alleges that this action constituted another example of the heightened and disparate scrutiny directed toward him.

**H. May 3, 2024 Incident**

98.    On approximately May 3, 2024, after fulfilling his courtroom responsibilities, Plaintiff communicated with Listenbee.

99.    Listenbee responded in a condescending and accusatory manner.

100.    Listenbee questioned whether Plaintiff had tried any cases and whether the judge had completed the day's proceedings.

101.    Listenbee also accused Plaintiff of mishandling a juvenile placement recommendation.

102.    Plaintiff disputed the accusation.

103.    Plaintiff alleges that this interaction was another example of heightened and unwarranted professional scrutiny.

**I. May 29, 2024 Salary and Seniority Remarks**

104.    On approximately May 29, 2024, Listenbee directed Plaintiff to provide coverage in

105.    Intermediate Punishment Court.

106.    During the conversation, Listenbee emphasized Plaintiff's compensation.

107.    Listenbee stated words to the effect: **"You are one of the highest paid ADAs in the Commonwealth and you must do more."** Listenbee further stated: **"Others are wondering and watching how you earn your pay."**

108.    Plaintiff explained that his salary reflected his extensive legal experience and professional contributions that included, but not limited to: assisting numerous attorneys within the DAO with preparing for and passing the bar examination.

109.    Plaintiff's compensation reflected, in material part, his seniority, experience, and lengthy professional career.

110.    Plaintiff alleges that his compensation and seniority were used to subject him to heightened requirements and scrutiny.

**J. June 2024 Administrative Leave**

112.    Plaintiff requested Administrative Leave for June 6, June 7, and June 10, 2024.

113.    Plaintiff understood that Administrative Leave days did not require the type of prior discretionary approval asserted by Listenbee.

114.    Listenbee nevertheless attempted to deny Plaintiff's leave based upon alleged coverage issues.

115.    Plaintiff informed Listenbee that adequate coverage existed, including coverage that could be provided by Chris Angelo.

116.    Listenbee nevertheless warned Plaintiff that his job was in jeopardy if he failed to report to work.

117.    Plaintiff reasonably understood the statement as a threat to his continued employment.

118.    As a result, Plaintiff was coerced into reporting to work.

**K. August 15, 2024 Public Exclusion and Confrontation**

119.    On approximately August 15, 2024, Plaintiff was assigned to Courtroom 3G for juvenile review hearings.

120.    During a proceeding, Angelo participated remotely through Zoom and narrated a video being presented to the hearing officer.

121.    Plaintiff observed the video.

122.    Angelo abruptly singled Plaintiff out by name and stated words to the effect:

**"Is that Joe Green? Oh Joe, you cannot watch the video."**

123.    Plaintiff was unaware of any restriction preventing him from observing the video.

124.    Other individuals were not similarly singled out or prohibited from observing it.

125.    Plaintiff calmly asked Angelo for clarification.

126.    Angelo simply repeated that Plaintiff could not view the video and provided no legitimate explanation.

127.    The exchange occurred publicly and created audible discomfort within the courtroom.

128.    Plaintiff subsequently attempted to discuss the matter privately with Angelo.

129.    Angelo became visibly agitated.

130.    Angelo aggressively confronted Plaintiff and waved his fingers in Plaintiff's face.

131.    Plaintiff alleges that this public exclusion and subsequent confrontation were part of the continuing course of marginalization directed toward him.

**L. December 2024-January 2025 Administrative Leave**

132.    Plaintiff requested January 2 and January 3, 2025 as Administrative Leave days.

133.    Listenbee again attempted to deny Plaintiff's request.

134.    Plaintiff requested a meeting concerning the dispute.

135.    The meeting included Human Resources employee Waynetta Faust and Chief of Staff Jenn Lin.

136.    During the meeting, Listenbee was asked to identify a policy granting him discretion to deny Plaintiff's Administrative Leave.

137.    Listenbee could not identify such a policy.

138.    Nevertheless, Listenbee warned Plaintiff that there would be "repercussions" if Plaintiff took the requested time off.

139.    Plaintiff reasonably understood the statement as a threat of adverse employment consequences.

## DISCRIMINATORY ASSIGNMENTS AND PROFESSIONAL ISOLATION

140.    Plaintiff's differential treatment extended beyond isolated disputes.

141.    Although Plaintiff was formally assigned to the Juvenile Unit, he did not report through the same supervisory structure as other ADAs assigned to that unit.

142.    Other Juvenile Unit ADAs generally reported to Chris Angelo.

143.    Plaintiff, however, was placed under the direct supervision of First Assistant Listenbee.

144.    Plaintiff alleges that this unusual reporting arrangement facilitated heightened scrutiny and materially distinguished his employment conditions from those of other ADAs.

145.    Plaintiff was also physically separated from his assigned unit.

146. The Juvenile Unit operated on the third floor.

147. Plaintiff was assigned an office on the fourteenth floor.

148. Plaintiff was therefore physically removed from the attorneys, files, communications, and daily activities of his assigned unit.

149. Plaintiff was required to travel to the third floor merely to retrieve files necessary to perform his work.

150. Plaintiff was excluded from ordinary professional interactions and the day-to-day operations of the Juvenile Unit.

151. Plaintiff alleges that this physical and organizational isolation marginalized him professionally and impaired his ability to participate fully in his assigned unit.

## DENIAL OF CAREER-ENHANCING CASE ASSIGNMENTS

152. Defendant represented that Plaintiff's Juvenile assignment would involve serious juvenile carjacking and prolific gun-offender matters.

153. Such cases provided significant trial experience, professional responsibility, visibility, and career development.

154. Plaintiff possessed extensive trial experience and was fully qualified to handle such matters.

155. Defendant nevertheless denied Plaintiff meaningful access to the promised volume and quality of these cases.

156. Significant carjacking and firearm matters were instead regularly assigned to white attorneys, including Brian Schroeder and Sam Butler.

157. Those white attorneys were thereby provided professional opportunities Defendant had represented would be afforded to Plaintiff.

158. Another Black ADA, Benjamin Kibugi, was likewise promised significant carjacking and firearm-related work but was allegedly denied comparable opportunities.

159. Plaintiff alleges that these assignment practices reflected a broader racial disparity affecting Black attorneys within the DAO.

## BROADER PATTERN OF RACIAL DISPARITIES

160. During Plaintiff's employment, Plaintiff personally observed and became aware of repeated circumstances in which Black attorneys were denied professional opportunities, subjected to heightened scrutiny, relegated to less desirable assignments, or treated more harshly than white attorneys.

161. Plaintiff observed that professional mistakes by white ADAs were frequently treated as correctable matters that did not permanently derail their careers.

162. White ADAs were often permitted to continue receiving desirable assignments and opportunities for specialized-unit placement notwithstanding mistakes or alleged misconduct.

163. Black ADAs, by contrast, were more frequently subjected to punitive reassignment, removal from trial work, or professional marginalization.

164. Plaintiff alleges that these disparities were sufficiently widespread that numerous Black attorneys either departed the DAO or experienced substantial career stagnation.

165. Plaintiff identified Benjamin Kibugi, Nakiesha Cox, Freddie Moore, Adara Combs, Nakesha Fields, Ebony Wortham, Brooke Floyd, Allayana Williams, Mariah Rivera, and Brianna Wakefield as Black attorneys whom Plaintiff understood to have experienced marginalization,

lack of advancement, denial of meaningful opportunities, or other adverse professional circumstances.

166. Plaintiff does not presently allege that every employment decision involving every attorney identified above independently violated federal law.

167. Rather, their experiences constitute relevant circumstantial evidence concerning the workplace environment and alleged pattern of racial disparity within which Plaintiff's treatment occurred.

## CHARGING UNIT RACIAL DISPARITY

168. Plaintiff also became aware of substantial racial disparities in assignments to the DAO Charging Unit or charging rotation.

169. The Charging Unit was frequently perceived within the office as less prestigious and, under some circumstances, punitive.

170. At one point, approximately five of seven attorneys assigned to the charging rotation were people of color and approximately four were Black.

171. Plaintiff understood that Black ADA Melissa Freeman raised concerns regarding the racial composition of those assignments.

172. After Freeman raised the disparity, the DAO took steps to alter the racial composition of the rotation by adding white attorneys.

173. Freeman was subsequently placed on probation.

174. Plaintiff alleges that these circumstances contributed to his reasonable belief that Black attorneys raising concerns about racial disparities could experience adverse professional consequences.

**DISPARATE DISCIPLINE**

175. Plaintiff also observed circumstances in which Black attorneys suffered substantial professional consequences for mistakes while white attorneys accused of comparable or more serious misconduct retained employment opportunities and professional status.

176. Black ADA Clifton Braxton, for example, was removed from trial work following an error in a Municipal Court theft case involving the value of allegedly stolen property.

177. Braxton was thereafter assigned to Diversion, Mental Health, and Pretrial functions.

178. According to Plaintiff's observations, Braxton was deprived of meaningful trial opportunities for an extended period.

179. Plaintiff contrasted such treatment with white attorneys whom Plaintiff observed or understood had committed workplace or professional infractions without suffering similarly career-limiting consequences.

180. Plaintiff alleges that these circumstances provide further evidence of a racially disparate system of professional accountability.

**MUNICIPAL POLICY, CUSTOM, PRACTICE, AND DELIBERATE INDIFFERENCE**

181. Plaintiff incorporates the preceding factual allegations concerning assignments, discipline, leadership opportunities, professional isolation, and the treatment of Black attorneys.

182. Plaintiff alleges that the discriminatory treatment directed toward him was not merely the unauthorized conduct of a single low-level employee.

183. First Assistant Listenbee occupied one of the highest supervisory positions within the Philadelphia District Attorney's Office.

184. Listenbee directly controlled or substantially influenced Plaintiff's assignments, reporting structure, leave, supervision, and working conditions.

185. Plaintiff alleges that the discriminatory disparities described herein were sufficiently repeated and widespread to constitute a practice or custom within the DAO concerning the treatment, advancement, discipline, and assignment of Black attorneys.

186. Plaintiff alleges that senior DAO management knew or should have known of racial disparities concerning assignments, professional opportunities, discipline, and treatment of Black attorneys.

187. Plaintiff further alleges that Black attorneys raised concerns regarding racial disparities within the office, including concerns involving assignment practices.

188. Despite such notice, Defendant failed to implement adequate corrective measures sufficient to prevent continued racial disparities.

189. To the extent discovery establishes that District Attorney Krasner personally approved, directed, ratified, or knowingly acquiesced in the challenged discriminatory practices or particular employment decisions, Plaintiff alleges that such conduct constituted action by an official possessing final policymaking authority in the relevant area.

190. Alternatively, Plaintiff alleges that the challenged constitutional violations resulted from sufficiently widespread and persistent practices and customs concerning discriminatory assignments, discipline, advancement, and treatment of Black attorneys.

191. Plaintiff further alleges that the City's failure to correct known racial disparities despite actual or constructive notice constituted deliberate indifference to the constitutional rights of affected employees, including Plaintiff.

192.    The policy, custom, practice, policymaker action and/or deliberate indifference alleged herein was a moving force behind the deprivation of Plaintiff's right to equal protection.

**INJURIES**

193.    Defendant's conduct interfered with Plaintiff's ability to perform his professional responsibilities on equal terms.

194.    Defendant deprived Plaintiff of professional-development and career-enhancing opportunities.

195.    Defendant subjected Plaintiff to heightened scrutiny.

196.    Defendant physically and organizationally isolated Plaintiff from his assigned unit.

197.    Defendant repeatedly interfered with Plaintiff's requested Administrative Leave.

198.    Defendant threatened Plaintiff with employment "repercussions" and potential jeopardy to his job.

199.    Defendant treated Plaintiff's compensation and seniority as a justification for imposing additional demands while denying him professional opportunities commensurate with his experience.

200.    Plaintiff suffered humiliation, embarrassment, emotional distress, frustration, loss of professional opportunities, reputational harm, and other damages.

## COUNT I

## TITLE VII — RACE DISCRIMINATION/DISPARATE TREATMENT

**42 U.S.C. §§ 2000e et seq.**

201.    Plaintiff incorporates paragraphs 1 through 200.

202.    Plaintiff is African American and is therefore a member of a protected class.

203.    Plaintiff was qualified for his positions and assignments.

204.    Defendant subjected Plaintiff to materially adverse and disadvantageous employment treatment, including involuntary reassignment, denial of career-enhancing work, differential supervision, professional isolation, interference with leave, threats of employment consequences, and denial of equal professional opportunities.

205.    Similarly situated white attorneys received materially more favorable professional treatment and opportunities.

206.    Defendant represented that Plaintiff would receive specialized carjacking and gun-offender assignments but provided significant opportunities of that nature to white attorneys including Brian Schroeder and Sam Butler.

207.    Defendant selected a less-experienced white attorney for Diversion leadership notwithstanding Plaintiff's extensive experience and prior leadership in that unit.

208.    Defendant's explanations concerning Plaintiff's assignments and treatment were inconsistent and, in material instances, contradicted by subsequent conduct.

209.    Plaintiff's race was a motivating factor in Defendant's treatment of him.

210.    Defendant thereby violated Title VII.

## COUNT II

### TITLE VII — RACE-BASED HOSTILE WORK ENVIRONMENT

211.    Plaintiff incorporates paragraphs 1 through 210.

212.    Plaintiff was repeatedly subjected to exclusion, isolation, heightened scrutiny, threats, unwarranted accusations, public humiliation, and professional marginalization.

213.    This conduct occurred against the background of alleged racial disparities in assignments, discipline, advancement, and professional-development opportunities.

214.    Plaintiff was physically separated from his assigned unit.

215.    Plaintiff was subjected to a different reporting structure than other Juvenile Unit attorneys.

216.    Plaintiff was denied professional work represented as part of his assignment while white colleagues received such opportunities.

217.    Plaintiff was publicly singled out and excluded under circumstances where others were not.

218.    Plaintiff was repeatedly threatened or pressured regarding leave and his employment.

219.    Viewed cumulatively and in context, the conduct was sufficiently severe or pervasive to alter Plaintiff's working conditions and create an abusive and discriminatory working environment.

220.    Defendant knew or should have known of the discriminatory working conditions and failed to take adequate corrective action.

221.    Defendant thereby violated Title VII.

## COUNT III

## TITLE VII — RETALIATION

**42 U.S.C. § 2000e-3(a)**

222.    Plaintiff incorporates paragraphs 1 through 221.

223.    In February 2024, Plaintiff complained directly to First Assistant Listenbee concerning the DAO's treatment of racially and sexually offensive conduct by a white male ADA toward Black female attorneys.

224.    Plaintiff reasonably believed the incident and Defendant's response implicated unlawful racial discrimination and unequal enforcement of workplace standards.

225.    Plaintiff's complaint constituted protected opposition under Title VII.

226.    Listenbee knew of Plaintiff's protected complaint.

227.    Shortly thereafter, on March 7, 2024, Listenbee informed Plaintiff that Plaintiff was required to accept an involuntary transfer and that no alternative existed.

228.    Plaintiff was thereafter subjected to heightened scrutiny, inconsistent assignments, interference with leave, threats regarding his employment, professional isolation, exclusion from meaningful assignments, and warnings of "repercussions."

229.    The temporal relationship between Plaintiff's protected opposition and materially adverse treatment supports an inference of retaliatory motive.

230.    Defendant's conduct was reasonably capable of deterring an employee from opposing unlawful discrimination.

231.    Plaintiff's protected activity was a but-for cause of one or more materially adverse actions imposed upon him.

232.    Defendant thereby retaliated against Plaintiff in violation of Title VII.

## COUNT IV

## AGE DISCRIMINATION

**Age Discrimination in Employment Act**

**29 U.S.C. §§ 621 et seq.**

233.    Plaintiff incorporates paragraphs 1 through 232.

234.    Plaintiff was approximately fifty-three years old and belonged to the class protected by the ADEA.

235.    Plaintiff was qualified to perform his position.

236.    Plaintiff possessed approximately eighteen to nineteen years of legal experience.

237.    Listenbee repeatedly emphasized Plaintiff's high compensation and stated that because Plaintiff was among the highest-paid ADAs, Plaintiff "must do more."

238.    Plaintiff's compensation reflected, in substantial part, Plaintiff's seniority and extensive years of professional experience.

239.    Defendant subjected Plaintiff to heightened scrutiny, undesirable and inconsistent assignments, threats regarding leave, and diminished professional opportunities.

240.    Plaintiff alleges, upon information and belief, that substantially younger attorneys were afforded materially more favorable treatment concerning assignments, supervision, professional-development opportunities, leave, and scrutiny.

241.    Plaintiff will identify additional substantially younger comparators through discovery.

242.    Plaintiff alleges that age was the but-for cause of materially adverse employment treatment imposed upon him.

243.    Defendant thereby violated the ADEA.

## COUNT V

## 42 U.S.C. § 1983 — DENIAL OF EQUAL PROTECTION

**Race Discrimination**

**Against Defendants Krasner, Listenbee, and Angelo**

244. Plaintiff incorporates paragraphs 1 through 243.

245. The Equal Protection Clause of the Fourteenth Amendment guarantees Plaintiff the right to be free from intentional racial discrimination by governmental officials.

246. Plaintiff is African American.

247. Defendants acted under color of state law.

248. Defendant Listenbee personally participated in employment decisions and treatment affecting Plaintiff, including Plaintiff's reassignment, supervision, assignments, leave disputes, scrutiny, and threatened employment consequences.

249. Defendant Angelo personally participated in exclusionary and differential treatment directed toward Plaintiff.

250. To the extent established through discovery, Defendant Krasner personally directed, approved, knowingly acquiesced in, or ratified discriminatory treatment or practices affecting Plaintiff.

251. Plaintiff was intentionally treated differently from similarly situated white attorneys concerning professional opportunities, assignments, supervision, scrutiny, working conditions, and/or discipline.

252. Plaintiff alleges that race was a motivating factor in the individual Defendants' challenged conduct.

253. The individual Defendants' conduct deprived Plaintiff of his right to equal protection under the Fourteenth Amendment.

254.    As a direct and proximate result, Plaintiff suffered professional, economic, emotional, and reputational injuries.

## COUNT VI

### 42 U.S.C. § 1983 — MUNICIPAL LIABILITY

**Fourteenth Amendment Equal Protection**

**Against Defendant City of Philadelphia**

255.    Plaintiff incorporates paragraphs 1 through 254.

256.    Plaintiff was deprived of his constitutional right to equal protection through intentional race discrimination.

257.    Plaintiff alleges that the constitutional deprivation resulted from a municipal policy, custom, practice, decision by a final policymaker, deliberate indifference, or combination thereof.

258.    The discriminatory practices alleged herein included disparities concerning assignment of career-enhancing work, professional advancement, supervision, discipline, and treatment of Black attorneys.

259.    Plaintiff alleges that these practices were persistent and sufficiently widespread to constitute a custom or practice having the force of law.

260.    Plaintiff further alleges that senior DAO officials possessed actual or constructive knowledge of racial disparities affecting Black attorneys.

261.    Black attorneys raised concerns regarding racial disparities within the DAO, thereby providing additional notice to senior management.

262.    Defendant nevertheless failed to take adequate corrective measures.

263.    To the extent District Attorney Krasner possessed final policymaking authority concerning the challenged employment practices and personally directed, approved, or ratified the challenged action, such conduct constituted municipal policy.

264.    Alternatively, the City's deliberate indifference to known racial disparities permitted discriminatory practices to continue.

265.    The municipal policy, custom, practice, policymaker action, and/or deliberate indifference alleged herein was a moving force behind Plaintiff's constitutional injury.

266.    Defendant City of Philadelphia is therefore liable pursuant to 42 U.S.C. § 1983.

## DAMAGES

267.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered and continues to suffer damages including, as applicable:

a. lost professional and promotional opportunities;

b. lost compensation and employment benefits to the extent established;

c. loss of professional standing and career development;

d. emotional distress, humiliation, embarrassment, inconvenience, and mental anguish;

e. consequential economic losses;

f. litigation expenses and costs; and

g. other damages established through discovery and trial.

268.    With respect to Plaintiff's ADEA claim, Plaintiff alleges that Defendant's violation was willful to the extent established by the evidence.

269.    With respect to the individual Defendants sued under § 1983, Plaintiff seeks punitive damages to the extent their conduct is proven to satisfy the governing standard for such relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment in his favor and against Defendants and asks this Court to:

A. Declare that Defendant violated Plaintiff's rights under Title VII;

B. Declare that Defendant violated Plaintiff's rights under the ADEA;

C. Declare that the responsible Defendants deprived Plaintiff of equal protection in violation of the Fourteenth Amendment and 42 U.S.C. § 1983;

D. Enter appropriate injunctive relief prohibiting unlawful race and age discrimination and retaliation;

E. Award Plaintiff back pay and lost employment benefits proven to have resulted from the unlawful conduct;

F. Award front pay and/or other appropriate equitable employment relief;

G. Award compensatory damages for emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary injury to the extent authorized by law;

H. Award compensatory damages under 42 U.S.C. § 1983 against the responsible Defendants;

I. Award punitive damages against the individual Defendants under § 1983 to the extent permitted by law and established by the evidence;

J. Award liquidated damages under the ADEA if Defendant's violation is determined to have been willful;

K. Award prejudgment and post-judgment interest;

L. Award reasonable attorneys' fees to the extent permitted by applicable law;

M. Award Plaintiff his taxable costs;

N. Order such equitable employment relief as the Court determines appropriate, including reinstatement of employment;

O. Grant Plaintiff a trial by jury on all claims and issues so triable; and

P. Grant such other and further relief as this Court deems just and proper.


## JURY DEMAND

Plaintiff demands trial by jury on all claims and issues triable by jury.


Respectfully submitted,

*Joseph Green, II*                                    Dated: _____

**JOSEPH GREEN II /es**
100 S. Broad Street
Suite 2121
Philadelphia, PA 19110
215-430-1039
greenjoeesquire@gmail.com
Plaintiff / Attorney Pro Se

**EXHIBIT A**
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
DETERMINATION AND NOTICE OF RIGHTS
EEOC Charge No.: **530-2025-06057**
Issued: **May 12, 2026**
Received by Plaintiff: **July 13, 2026, at 1:43 p.m.**


**[ATTACH TRUE AND CORRECT COPY OF EEOC DETERMINATION AND NOTICE OF RIGHTS HERE]**